11th
Court of Appeals

                                                                  Eastland,
Texas

                                                                        Opinion

 

Raul Eddie Lopez

Appellant

Vs.                   No.  11-02-00366-CR -- Appeal from Taylor County

State
of Texas

Appellee

 

The jury convicted Raul Eddie Lopez of aggravated
sexual assault and aggravated kidnapping. 
The jury assessed his punishment at confinement in the Institutional
Division of the Texas Department of Corrections for a term of 75 years for the
aggravated sexual assault conviction and for a term of 99 years for the
aggravated kidnapping conviction.  The
jury also imposed a fine of $10,000 for each conviction.  Appellant raises two issues on appeal.  We affirm.

The facts giving rise to appellant=s convictions occurred on the night of
July 28, 1996, in and around Merkel.  The
victim of the offenses, S.M., was appellant=s
former girlfriend.  Appellant and S.M.
had previously lived together in Dallas. 
S.M. left appellant in the spring of 1996 to return to Merkel, her
hometown.  S.M. encountered appellant on
the evening of July 28, 1996, at a relative=s
home in Merkel.  S.M. testified that,
while giving appellant a ride to a convenience store in her aunt=s car, appellant ordered her to drive
out into the countryside.  He threatened
S.M. with a gun if she failed to follow his orders.  After instructing S.M. to park the car in a
remote area, he forced her to remove her clothing and have sex with him against
her will.  S.M. testified that appellant
struck her repeatedly during this ordeal. 
Appellant ultimately forced S.M. to get into the trunk of the car by
hitting her with a tire tool.  Appellant
then drove the car a short distance with S.M. in the trunk until the car=s engine failed.  Appellant removed S.M. from the trunk and
ordered her to Awipe down@ the car of all evidence.  He also ordered S.M. to douche with a
concoction of whiskey, Gatorade, and perfume. 
A passing motorist subsequently transported appellant and S.M. back to
Merkel.  








Appellant complains in his first issue that the
trial court erred in permitting the State to offer evidence during the
guilt/innocence phase of threats allegedly made by appellant to S.M. after the
commission of the offenses.  The State
did not refer to the threats during the prosecutor=s
direct examination of S.M.  On
cross-examination, defense counsel asked S.M. about her subsequent conviction
for theft.  The theft conviction occurred
three years after appellant=s
assault and kidnapping of S.M.[1]  On redirect examination, the State sought to
offer evidence of threats made by appellant to S.M. wherein appellant demanded
that she drop her allegations against him. 


The trial court conducted a hearing outside of the
jury=s
presence with respect to the threats made by appellant.  Defense counsel objected to the admissibility
of any evidence of the threats on the basis that it constituted inadmissible
evidence of extraneous offenses under TEX.R.EVID. 404(b).  Defense counsel further argued that the
prejudicial effect of this evidence outweighed its probative value.  See TEX.R.EVID. 403.  The trial court overruled these
objections  and permitted the State to
offer evidence of some of the threats made by appellant.  

S.M. testified before the jury that appellant
called her approximately one month after the incident.  Appellant informed her during this
conversation that Asomething
would happen@ to her
if she did not drop the charges.  Later
that night, a garage located adjacent to the house in which S.M. resided was
set on fire.  S.M. testified that she
received a phone call from appellant the next day wherein he advised her that Awhat happened last night could happen
again if [she] didn=t
drop the charges.@  S.M. also testified about another threat made
to her by appellant in September 1999. 
S.M. was employed as a convenience store manager at the time.   Someone that sounded like appellant called
her at work; told her:  AYou=re
dead, bitch@; and
then hung up.  S.M. testified that she
responded to this threat by removing approximately $4,000 from the store=s safe and fleeing the state.  S.M. was convicted of theft as a result of
this event.  This is the same conviction
for theft to which defense counsel alluded during S.M.=s
cross-examination.

Rule 404(b) provides in part:  








Evidence of other crimes, wrongs or acts is not admissible to
prove the character of a person in order to show action in conformity
therewith. It may, however, be admissible for other purposes, such as proof of
motive, opportunity, intent, preparation, plan, knowledge, identity, or absence
of mistake or accident.

 

Rule 404(b) incorporates the fundamental tenet of our criminal
justice system that an accused may be tried only for the offense for which he
is charged and not his criminal propensities. Rankin v. State, 974
S.W.2d 707, 718 (Tex.Cr.App.1996).  In
order for an extraneous offense to be admissible, it must be relevant apart
from supporting an inference of character conformity.  Montgomery v. State, 810 S.W.2d 372,
387 (Tex.Cr.App.1991).   We review the
trial court=s
admission of extraneous offense evidence under an abuse of discretion standard.
 Rankin v. State, supra at 718. A
trial court abuses its discretion when it acts arbitrarily or unreasonably
without reference to any guiding rules or principles.  See Montgomery v. State, supra at
380.  We will uphold the trial court=s ruling if it was correct on any
theory of law applicable to the case, in light of what was before the trial
court at the time the ruling was made.  State
v. Ross, 32 S.W.3d 853, 856 (Tex.Cr.App.2000).

The enumerated Rule 404(b) exceptions are neither
mutually exclusive nor collectively exhaustive. 
Montgomery v. State, supra at 377.  Texas courts have held that criminal acts
designed to reduce the likelihood of prosecution, conviction, or incarceration
for the offense at issue are admissible under Rule 404(b) to show the defendant=s Aconsciousness
of guilt.@ See
Ransom v. State, 920 S.W.2d 288, 299 (Tex.Cr.App.)(Op.
on reh=g),
cert. den=d, 519
U.S. 1030 (1996).   Attempts by the
accused to suppress the testimony of a witness are admissible under the Aconsciousness of guilt@ exception.  Rodriguez v. State, 577 S.W.2d 491, 493
(Tex.Cr.App.1979); Peoples v. State, 874 S.W.2d 804, 809 (Tex.App. - Fort Worth 1994, pet=n
ref=d); Roberts v. State, 795 S.W.2d
842, (Tex.App. - Beaumont 1990, no pet=n). 
AThreats
or other attempts at coercion are >hardly
the actions of an innocent accused,=
and evidence of such is every bit as probative of guilt as would be flight by
the accused.@   Peoples v. State, supra at 809
(quoting in part Rodriquez v. State, supra at 493).   Therefore, Rule 404(b) did not prohibit evidence
of appellant=s
attempts to coerce S.M. into dropping her accusations against him. 

While evidence of other wrongs or acts may be
relevant for some other permissible purpose, the evidence may be excluded:

[I]f
its probative value is substantially outweighed by the danger of unfair
prejudice, confusion of the issues, or misleading the jury, or by
considerations of undue delay, or needless presentation of cumulative evidence.









Rule 403.  There is a
presumption that relevant evidence is more probative than prejudicial. See
Montgomery v. State, supra at 389. In evaluating the trial court=s determination under Rule 403, a
reviewing court is to reverse the trial court=s
judgment Ararely
and only after a clear abuse of discretion.@
Mozon v. State, 991 S.W.2d 841, 847
(Tex.Cr.App.1999).

Factors employed in balancing the prejudicial and
probative value of an extraneous offense under Rule 403 are: (1) how
compellingly the extraneous offense evidence serves to make a fact of
consequence more or less probable - a factor which is related to the strength
of the evidence presented by the proponent to show the defendant in fact
committed the extraneous offense; (2) the potential the other offense evidence
has to impress the jury Ain
some irrational but nevertheless indelible way;@
(3) the time the proponent will need to develop the evidence, during which the
jury will be distracted from consideration of the indicted offense; (4) the
force of the proponent=s
need for this evidence to prove a fact of consequence, i.e., does the proponent
have other probative evidence available to him to help establish this fact and
is this fact related to an issue in dispute. 
Santellan v. State, 939 S.W.2d
155, 169 (Tex.Cr.App.1997); Montgomery v. State, supra at 389-90. 

As noted previously, appellant=s efforts to suppress S.M.=s allegations of aggravated sexual
assault and aggravated kidnapping were relevant under the consciousness of
guilt exception. Evidence that appellant attempted to coerce S.M. into dropping
her accusations with threats of violence were highly probative that appellant
committed the offenses with which he was charged.  The presentation of the evidence regarding
appellant=s threats
did not take a large amount of time. 
Furthermore, the evidence of appellant=s
threats served a purpose unrelated to supporting an inference of character
conformity because it provided an explanation of why S.M. committed the felony
theft which defense counsel referenced in an effort to impeach S.M.  We conclude that the trial court did not
abuse its discretion in its implicit determination that the probative value of
appellant=s threats
against S.M. was not substantially outweighed by the danger of unfair
prejudice.  Appellant=s first issue is overruled.








Appellant=s
second issue addresses the manner in which the trial court responded to two
notes received from the jury during the punishment phase.  Appellant contends that the trial court erred
by failing to comply with the procedural requirements of TEX. CODE CRIM. PRO.
ANN. art. 36.27 (Vernon 1981) when it responded to the two notes from the
jury.  Article 36.27 provides, among other
things, that the trial court shall: 

[A]nswer any such communication [from the jury] in writing,
and before giving such answer to the jury shall use reasonable diligence to
secure the presence of the defendant and his counsel, and shall first submit the
question and also submit his answer to the same to the defendant or his counsel
for objections and exceptions, in the same manner as any other written
instructions are submitted to such counsel, before the court gives such answer
to the jury, but if he is unable to secure the presence of the defendant and
his counsel, then he shall proceed to answer the same as he deems proper. The
written instruction or answer to the communication shall be read in open court
unless expressly waived by the defendant.

 

The text of each note and the trial court=s
written response to each are as follows:

                                                                      First
Note 

Do
we sentence for each separate offense? 
Do they run together? 

 

s/[Jury Foreperson]

 

Ladies
& Gentlemen:

 

Yes, you assess a punishment for each offense for
which you have found the defendant guilty. 


 

If the second question asks, do they run
together, I am not allowed to answer that type of question.  (Emphasis in original.)[2]


 

s/[Trial Judge]

 

Waived reading on the record.  

 

s/[Trial Judge=s
initials]

 

 

 








                                                                    Second
Note 

 

What
is the difference between Alife@ and 99 years?  Is Alife@ subject to parole?  Can  Agood time@
reduce the 30 yr minimum of a, for example, 60 yr term?  (p5, &
2) Who gets $10,000 fine?  

 

s/[Jury Foreperson=s initials]

 

Ladies
& Gentlemen:

 

I am not allowed to answer these questions.

 

s/[Trial Judge]

 

Waived reading on the record.

 

The reporter=s
record does not contain any reference to the jury=s
notes.  Appellant argues that the trial
court erred in failing to bring either of the notes to the attention of
appellant and his trial counsel as required by Article 36.27.  The record does not support appellant=s contentions in this regard.  The trial court wrote Awaived
reading on the record@
on each of the notes.[3]  This notation indicates that the trial court
complied with the requirements of Article 36.27.

Moreover, even if the trial court failed to comply
with the procedural requirements of Article 36.27, the trial court did not
commit reversible error with respect to the jury=s
notes.  The trial court=s response to the first note consisted
of two parts.  The first part of the
response merely clarified the jury=s
task of assessing punishment for each of the offenses upon which it had
previously convicted appellant.  The
second part of the response did not include an additional instruction because
it informed the jury that the trial court could not answer the question.  The Court of Criminal Appeals has held that,
where the communication between the trial court and the jury does not amount to
additional instructions, noncompliance with the provisions of Article 36.27
does not constitute reversible error. McFarland v. State, 928 S.W.2d
482, 517‑18 (Tex.Cr.App.1996), cert. den=d,
519 U.S. 1119 (1997).  








The trial court=s
answer to the second note also informed the jury that the court could not
answer the jury=s
questions.  Appellant argues that the
jury=s note
indicated that the jury was considering impermissible grounds for determining
his punishment (the application of Agood
conduct@ credit
and parole to the time that appellant would actually serve in prison).
Appellant contends that the trial court should have provided an instruction to
the jury which directed it not to consider these elements in its
deliberations.  Courts generally presume
that the jury follows the trial court=s
instructions in the manner presented in the court=s
charge.  Colburn v. State, 966
S.W.2d 511, 520 (Tex.Cr.App.1998).  A
note from the jury at a preliminary point in its deliberations does not rebut
the presumption that the jury ultimately followed the trial court=s instructions in reaching its
verdict.  Colburn v. State, supra at
520; Graham v. State, 96 S.W.3d 658, 661 (Tex.App.
- Texarkana 2003, pet=n
ref=d). 
Appellant=s second
issue is overruled.  

The judgments of the trial court are affirmed.

 

TERRY McCALL

JUSTICE

 

February 12, 2004

Do not publish.  See
TEX.R.APP.P. 47.2(b).

Panel
consists of: Arnot, C.J., and

Wright,
J., and McCall, J.











     [1]Appellant
remained at large for several years after the assault and kidnapping
occurred.  The trial occurred more than
six years after the incident.  





     [2]The
word Arun@ in the text of the jury=s note
was not completely legible.





     [3]Appellant
does not dispute that the trial court wrote the Awaived
reading on the record@ notation on each of the jury=s notes.